## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ROBERT A. DOANE** | **Civil Action No.** |
| **Plaintiff** | |
| **v.** | |
| **ERIKA J. BARRERA** | |
| **Defendant** | |

## COMPLAINT
### (With Jury Demand Endorsed Hereon)

Now comes Plaintiff, **ROBERT A. DOANE**, by and through undersigned counsel, and for his Complaint against Defendant **ERIKA J. BARRERA** states and avers as follows:[1]

## INTRODUCTION

Plaintiff, Robert A. Doane brings this complaint against Defendant Erika J. Barrera ("Barrera") seeking actual, statutory, and punitive damages for knowing and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA"), Massachusetts Telemarketing Solicitation Act, M.G.L. c. 159C (the "MTSA"), and violations of the Massachusetts Consumer Protection Act, G.L. c. 93A, et seq. ("MCPA"). Specifically, as set forth herein, Plaintiff alleges that Barrera, an Allstate Insurance agent, in order to attempt to illegally generate insurance sales, commissioned and directed and conspired to direct telemarketing calls to Plaintiff without his consent in violation in the TCPA, MTSA and MCPA.

---

[1] The allegations herein are made upon information and belief, except the allegations pertaining to Plaintiff, his acts and facts or events within his own personal experience, which are alleged based on his personal knowledge.

**PARTIES**

1.      Plaintiff, Robert A. Doane ("Doane" or "Plaintiff"), is, and was at all relevant times, a citizen of the Commonwealth of Massachusetts with a residence at 103 Prospect Street, Wakefield, Massachusetts 01880.  Plaintiff likewise has a residence at 21 New Lane, West Tisbury, Massachusetts, 02575.

2.      Defendant, Barrera ("Barrera" or "Defendant"), a citizen of the State of Texas, is an "excusive" Allstate Insurance Company agent with her principal place of business located at 84 NE Loop 410, Ste. 113, San Antonio, TX 78216.

3.      Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that Defendant's officers, directors, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of Defendant's officers, directors, agents, servants, or employees.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves violations of the TCPA. *Mims v. Arrow Fin. Servs., LLC*., 132 S. Ct. 740 (2012). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law causes of action.

5.      This Court has general jurisdiction over Defendant as Defendant engaged in nationwide telemarketing efforts and conduct, including in this District.

6.      This Court has personal jurisdiction over Defendant because Defendant attempts to conduct business in this District and has continuous and systematic contacts with this District

through her telemarketing efforts, including, among other things, that she directed and caused to be made automated calls that specifically target consumers in this District.  Further, wrongful conduct giving rise to the claims asserted herein occurred in and was directed to this District.

7.      This Court also likewise has personal jurisdiction over Defendant for those claims arising under the MTSA, because "[a] court of the Commonwealth may exercise personal jurisdiction over a nonresident or his executor or administrator as to an action or proceeding authorized by [M.G.L. c. 159C § 12]."

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in and was directed to this District.

## FACTUAL ALLEGATIONS

### A.      Barrera's Telemarketing Practices

9.      At all relevant times, Barrera was an exclusive insurance agent for Allstate Insurance Company.

10.      At all relevant times, in order to generate sales of insurance, Barrera utilized overseas telemarketers (the "Telemarketers") to repeatedly, harassingly, deceptively and illegally place hundreds of thousands of calls to consumers nationwide, including Massachusetts consumers, utilizing caller-id spoofing (a process that displaces the actual caller identification with a fake local caller identification), robocalls and calls using automatic telephone dialing systems ("ATDS").

11.      At no point has either Barrera or the Telemarketers been registered with the Massachusetts Office of Consumer Affairs and Business Regulations (the "Office") as required by 201 C.M.R. § 12.04.

12.     At all times relevant, including but not limited to 2019, Barrera authorized the Telemarketers to solicit business on her behalf through use of telemarketing, and Barrera had control over the Telemarketers' actions on her behalf.  For example:

a.     Barrera limited the type of consumers the Telemarketers could solicit.

b.     Barrera directed the geographical areas where the Telemarketers solicited.

c.     Barrera and/or Allstate Insurance Company provided the scripts and sales pitches for the Telemarketers.

d.     Barrera instructed the Telemarketers with respect to the volume of telemarketing calls and the methods to be utilized.

e.     Barrera had day-to-day control over the Telemarketers' actions, including the ability to prohibit the Telemarketers from using an ATDS, illegal spoofing and other illegal methods to contact potential customers.

13.     Although Barrera either knew or should have known of the provisions of the TCPA and MTSA, Barrera, at all relevant times, directed her Telemarketers to generate leads by using methods that violate the substantive provisions of the TCPA and MTSA.

14.     The calls placed to Plaintiff complained of herein were within the scope of the Telemarketers' job duties and the actual or apparent authority the Defendant provided to the Telemarketers.

15.     At all relevant times, Defendant profited from the Telemarketers' aforementioned efforts and ratified the actions of the Telemarketers by knowingly accepting the benefits of the Telemarketers' illegal activities.

4

B.       **Illegal and Harassing Calls to Plaintiff**

16.     Plaintiff is an individual who suffers from chronic pain and a sleep disorder, and often sleeps during the day.  Plaintiff is also the trustee of several trusts, and at the time of the illegal calls in question, was the primary caretaker and power of attorney for his two elderly parents.  In these capacities, Plaintiff was required to keep his cellphone on his person at all times so he could attend to the needs of the trusts and direct the care of his family members.

17.     At all times relevant, Plaintiff's cell phone number, 781-245-6577 ("Cell Phone"), which is used solely for residential purposes, has been registered to a "do not call list" maintained by the Federal Trade Commission ("FTC") and the Massachusetts Do Not Call registry, as Plaintiff does not wish to be disturbed and harassed by telemarketers.

18.     Over the course of the days preceding February 26, 2019, Plaintiff received numerous unsolicited telemarketing calls using ATDS from various locally spoofed numbers attempting to sell insurance related products and services (the "Spoofed Calls").

19.     The Spoofed Calls caused Plaintiff's Cell Phone to ring in short bursts.  Upon answering a Spoofed Call, Plaintiff heard a pause, a click, and a "boop" sound before a Telemarketer came on the line—facts that evidence the use of an ATDS.

20.     During the course of the Spoofed Calls, the Telemarketers would use a bogus company name (as the entity they were purportedly representing) and attempt to solicit Plaintiff to purchase insurance.

21.     The Telemarketers who called Plaintiff on the Spoofed Calls asked Plaintiff for his name and did not appear to know his name or address.  They appeared to be "cold calling," i.e., the agents were not calling from a pre-existing list but were calling randomly, to the Cell Phone which was registered on the national and Massachusetts do-not-call registries—a clear

indication that Plaintiff's number was randomly generated and that the Telemarketers used a device capable of performing this function.

22.     Demands were made for the Spoofed Calls to stop, all to no avail, as the calls thereafter continued.

23.     Following these Spoofed Calls, Plaintiff would attempt to call back the number that appeared on his caller-id.  These attempts were unsuccessful as the numbers that appeared on his caller-id were spoofed and were not working numbers.

24.     Despite Plaintiff's requests that the calls stop, the Telemarketers continued to call and harass Plaintiff.  Plaintiff therefore determined that the only way to get the calls to stop was to express some interest in the services or products being offered for sale in an attempt to identify those responsible for the calls.

25.     After receiving not less than seven (7) Spoofed Calls, each of which had the same fact pattern and were clearly from the same source, interest was feigned for the sole purpose of identifying those responsible.

26.     On February 26, 2019, at 12:15 p.m., Plaintiff received a Spoofed Call on the Cell Phone from a number appearing as 781-226-1214.  Solely in an attempt to identify the party responsible for the Spoofed Calls, Plaintiff feigned interest on this call.

27.     Following the aforementioned February 26, 2019 Spoofed Call, Plaintiff received a call without prior express written consent from Barrera's employee Stacy Zentino at 12:57 PM on that date from 210-775-4050.  Ms. Zentino claimed to be from "Allstate" and attempted to sell Plaintiff insurance.  Plaintiff indicated that if he was interested he would call back.

28.     As of February 26, 2019, Plaintiff had no prior business relationship of any kind with Barrera and no desire to purchase insurance from Allstate.

29.     Plaintiff did not give Barrera or her agent Telemarketers prior express written consent to contact Plaintiff on his Cell Phone at any time.

30.     After the call from Ms. Zentino, Plaintiff researched 210-775-4050 and determined that it was an Allstate number but could not determine which Allstate office the number was associated with.  Solely in an attempt to determine this, Plaintiff dialed this number and asked to speak with Ms. Zentino.  The agent that answered the call indicated that Ms. Zentino was at lunch and suggested to Plaintiff that Ms. Zentino would call back.

31.     Although Plaintiff did not give Barrera or Ms. Zentino consent to contact him on the Cell Phone, Plaintiff received several calls from 210-775-4050 during the course of the afternoon of February 26, 2019.

32.     On March 4, 2019, Plaintiff spoke to Barrera.  During the course of this conversation, Ms. Barrera acknowledged that Barrera's insurance agency had contacted him and was unable to produce any evidence of prior express written consent to do so.

**C.    Plaintiff's Injuries**

33.     As a direct and proximate result of Barrera's aforementioned illegal telemarketing activities, Plaintiff has suffered actual harm, including but not limited to, invasion of privacy, loss of concentration, loss of productivity, loss of sleep, annoyance, aggravation, emotional distress, diminished value and utility of his Cell Phone and subscription services, wear and tear to his Cell Phone, the loss of battery charge and battery life, and per-kilowatt electricity cost required to recharge his cellular telephone as a result of increased usage of his Cell Phone services.

34.     In addition to the foregoing, as a direct and proximate result of Barrera's aforementioned illegal telemarketing activities, Plaintiff was forced to identify those responsible

to try and get the illegal activities to cease, and in the process of doing so incurred expense in time, materials, and use of equipment.

## COUNT I
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A))

35.     The allegations in the preceding paragraphs of this Complaint are realleged and incorporated by reference.

36.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

37.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

38.     The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

39.     According to findings of the Federal Communication Commission ("FCC"), the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

40.     The FCC requires prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. In *the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (2012).

41.     The FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

42.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013) ("May 2013 FCC Ruling").

43.     Barrera had a duty and was legally responsible for ensuring that the Telemarketers complied with the TCPA even if Barrera did not make the calls herself.

44.     Barrera, by and through her agent Telemarketers, violated 47 U.S.C. §227(b)(1)(A)(iii) by placing not less than eight (8) telemarketing calls to Plaintiff's Cell Phone using an automatic telephone dialing system ("ATDS") and spoofed numbers without Plaintiff's prior express written consent.

45.     Pursuant to 47 U.S.C. § 227(b)(3)(B), Barrera is liable to Plaintiff for a minimum of $500.00 per violation, or not less than $ 4,000.00 for the not less than eight (8) violations hereunder.

46.     Pursuant to 47 U.S.C. § 227(b)(3)(C), willful or knowing violations of the TCPA trigger treble damages.

47.     The conduct in violation of 47 U.S.C. §227(b)(1)(A)(iii) was willful and knowing.

48.     Plaintiff is entitled to have his single damages of $4,000.00, trebled to $12,000.00 for the aforesaid willful and knowing violations of the TCPA.

<u>**COUNT II**</u>
**(Violations of the Telephone Consumer Protection Act, §227(c)(1) to (4))**

49.     The allegations in the preceding paragraphs of this Complaint are realleged and incorporated by reference.

50.     A private right of action exists pursuant to 47 U.S.C. § 227(c)(5) for violations of the regulations promulgated pursuant to the TCPA for the protection of telephone subscriber privacy rights.

51.     47 C.F.R. § 64.1200(c) and (d) sets forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call.

52.     Barrera did directly, and through her agent Telemarketers, violate 47 C.F.R. § 64.1200 *et seq.* in the following respects:

a.     By failing to ensure that Barrera and the Telemarketers maintained a do-not-call list in violation of 47 C.F.R. § 64.1200(d)(1);

b.     By failing to provide Plaintiff, upon his demand, Barrera's and the Telemarketers' do-not-call policy in violation of 47 C.F.R. § 64.1200(d)(1);

c.     By failing to ensure that her personnel and the personnel of the Telemarketers were informed and trained in the existence and use of the do-not-call list in violation of 47 C.F.R. § 64.1200(d)(2);

d.     By failing to provide to Plaintiff the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted in violation of 47 C.F.R. § 64.1200(d)(4); and

e.     By engaging in and causing a pattern or practice of initiating telephone solicitations to Plaintiff's Cell Phone without Plaintiff's prior express written consent on at least eight (8) occasions in violation of 47 U.S.C. § 64.1200(c)(2).

53.     Pursuant to 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, Barrera is liable to Plaintiff for a minimum of $500 per violation of the TCPA, for the not less than sixteen (16) violations hereof.[2]

54.     Barrera's aforesaid conduct in violation of 47 U.S.C.A. § 227(c)(5) and the regulation promulgated thereunder, was willful and knowing.

55.     Plaintiff is entitled under this count to have his single damages ($500 per violation) trebled for these willful and knowing violations.

<u>COUNT III</u>
**Violations of the Massachusetts Telemarketing Solicitation Act, G.L. c. 159C**

56.     The allegations in the preceding paragraphs of this Complaint are realleged and incorporated by reference.

57.     The Massachusetts Telephone Solicitation Act, M.G.L. c. 159C *et seq*., (the "MTSA") and the regulations promulgated under the authority of the MTSA impose strict pre-conditions, limitations and restrictions on unsolicited telephonic sales calls made to Massachusetts residents, and any such calls not in compliance with any of these pre-conditions, limitations and restrictions are prohibited and give rise to a private right of action.

58.     Telephone solicitors engaging in unsolicited telephone sales calls to Massachusetts consumers are required to "properly register on an annual basis" with the Office of Consumer Affairs and Business Regulations ("the Office"). 201 C.M.R. §12.04.

59.     At all times relevant, including but not limited to February, 2019, neither Barrera nor her agent Telemarketers were registered with the Office, as required by 201 C.M.R. §12.04.

---

[2] This figure is derived from eight (8) calls with at least two (2) separate violations on each call.

60.     By failing to comply with the registration requirement, Barrera and her agent Telemarketers failed satisfy a basic, threshold requirement for conducting solicitations in Massachusetts and, thus violated the MTSA.

61.     Barrera directly and through her agent Telemarketers, likewise violated the MTSA in connection with the calls complained of herein in at least the following respects:

a.     By making or causing unsolicited sales calls to be made to Plaintiff without prior express consent or permission in violation of M.G.L. c. 159C, § 1;

b.     By making or causing calls to be made to Plaintiff without proper disclosure concerning the identity of the telemarketers and the ultimate seller in violation of M.G.L. c. 159C, § 5A and 201 C.M.R. §12.02(7);

c.     By making or causing calls to be made to Plaintiff while using falsified and displaced caller identification in connection with the Spoofed Calls to Plaintiff in order to circumvent the use of caller identification services or devices in violation of M.G.L. c. 159C, §4 and 201 C.M.R., §12.02(5).

62.     The MTSA provides that "[a] person that receives more than 1 unsolicited telephonic sales call within a 12-month period by or on behalf of the same person or entity in violation of [c. 159C] may … bring an action to recover for actual monetary loss from such knowing violation or to receive not more than $5,000 in damages for such knowing violation, whichever is greater …"

63.     Accordingly, Plaintiff is entitled to statutory damages of $5,000 for each MTSA violation alleged herein, or actual damages, whichever results in a greater recovery.

<u>COUNT IV</u>
**Violations of the Massachusetts Consumer Protection Act, G.L. c. 93A**
**And Request for Injunctive Relief and Disgorgement of Profits**

64.     The allegations in the preceding paragraphs of this Complaint are realleged and incorporated by reference.

65.     At all times relevant, Defendant was engaged in trade or commerce within the meaning of M.G.L. c. 93A §2.

66.     940 C.M.R. §3.16(4) provides that an act or practice violates M.G.L. c. 93A, §2 "if it violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other federal consumer protection statutes within the purview of M.G.L. c. 93A, s. 2".

67.     The TCPA was promulgated for the protection of consumers.

68.     940 C.M.R. §3.16(3) provides that an act or practice violates M.G.L. c. 93A, §2 "if it fails to comply with existing statutes, rules, regulations, or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection."

69.     The MTSA was promulgated by the Commonwealth for the protection of Massachusetts consumers, including Plaintiff.

70.     Barrera's and the Telemarketers' numerous violations of the TCPA and MTSA (and the regulations promulgated thereunder) constitute unfair and deceptive conduct in violation of M.G.L. c. 93A, §2.

71.     Barrera engaged in unfair and deceptive conduct, by knowingly and willfully contracting with Telemarketers, who Barrera either knew or should have known utilized illegal practices and methods, to solicit Massachusetts consumers in violation of the TCPA and MTSA.

72.     Barrera knew or should have known of the requirements and prohibitions of the TCPA and MTSA (and their underlying regulations) and the applicable provisions of the Massachusetts Privacy Act and Massachusetts common law.  Accordingly, Barrera's violations of M.G.L. c. 93A, §2 were willful and knowing.

73.     Barrera and her agent Telemarketers further engaged in unfair and deceptive conduct by repeatedly violating Plaintiff's right to privacy.

74.     As a direct and proximate result of the aforementioned violations of M.G.L. c. 93A Plaintiff has suffered the harm set forth in paragraphs thirty-three (33) and thirty-four (34) above and other like and serious harm in an amount to be established at trial.

75.     As of the filing of this Complaint, Defendant's unlawful conduct in violation of the TCPA, MTSA and Chapter 93A is continuing.  Said conduct, including the unsolicited, harassing and unlawful calls, as alleged herein, will continue, and will inflict further damage on Plaintiff and other consumers, unless and until this Court, or another court of competent jurisdiction, issues an injunction directing Defendant to cease and desist from said conduct.

76.     Accordingly, while monetary damages may be sufficient to compensate Plaintiff for past violations, injunctive relief is necessary in order to stop Defendant's unlawful course of conduct from continuing.   Furthermore, as a remedy under Chapter 93A, Defendant should be required to disgorge all revenues generated from her illegal telemarketing practices.

**WHEREFORE**, as to all Counts, Plaintiff requests that this Court:

1.     Enter judgment for Plaintiff and against Defendant;

2.     Award Plaintiff his actual, compensatory, punitive and special damages to be determined at trial;

3.      Find Defendant to be vicariously liable for the actions and omissions of her agent Telemarketers complained of herein;

4.      Find that Defendant and her agent Telemarketers violated the TCPA, and award Plaintiff statutory damages of not less than $500 for each violation;

5.      Find that Defendant's violations of the TCPA were willful, and award Plaintiff statutory damages of not less than $1,500 for each violation;

6.      Find that Defendant and her agent Telemarketers violated the MTSA, and award Plaintiff statutory damages of not less than $5,000.00 for each violation;

7.      Find that Defendant and her agent Telemarketers' actions complained of were willful, knowing, intentional, unfair, and deceptive, in violation of M.G.L. c. 93A and award Plaintiff actual, statutory and/or multiple damages;

8.      Award Plaintiff his reasonable costs, expert fees, attorney fees and expenses;

9.      Issue a **permanent injunction**, enjoining Defendant from additional and continuing violations of the TCPA, MTSA, and Chapter 93A;

10.      Order disgorgement of all Defendant's ill-gotten revenues; and

11.      Award Plaintiff pre-judgment interest and such other and further relief as Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL CLAIMS SO TRIABLE.**

Dated: February 7, 2022          Respectfully submitted,

/s/ Richard B. Reiling
Richard B. Reiling (BBO# 629203)
**BOTTONE | REILING**
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: (617) 412-4291
Facsimile:  (617) 412-4406
Email: richard@bottonereiling.com

And

/s/ David Pastor
David Pastor (BBO# 391000)
**PASTOR LAW OFFICE, LLP**
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: (617) 742-9700
Facsimile:  (617) 742-9701
Email: dpastor@pastorlawoffice.com

*Plaintiff's Counsel*